**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HAZARD CANNON; NORMAN PHILLIPS; DAN
SIZEMORE,
Plaintiffs-Appellants,

v.

DURHAM COUNTY BOARD OF ELECTIONS,
an official agency of the State of North
Carolina; THE DURHAM COUNTY BOARD
OF COMMISSIONERS; THE DURHAM
COMMITTEE ON THE AFFAIRS OF BLACK
PEOPLE; DURHAM BRANCH OF THE
NAACP; BEVERLY JONES, Doctor;
WILLIAM BELL; MOZELL ROBINSON;
DEBORAH GILES; JOHN JOLLY; DEBORAH
JOLLY; HARRIS C. JOHNSON, SR.; ELLEN
MAYS; CLARENCE R. JONES; JENNIFER

MCGOVERN; STEVE UNRUHE; DABNEY
HOPKINS; PATRICIA N. PAGE; PAGE
MCCULLOUGH; DAVID AUSTIN; LEIGH
BORDLEY; MARGARET MCREARY,
Defendants-Appellees,

and

THE NORTH CAROLINA STATE BOARD OF
EDUCATION; DENNIS A. WICKER, in his
official capacity as Lieutenant Governor
of the State of North Carolina and
President of the Senate; HAROLD J.
BRUBAKER, in his official capacity as
Speaker of the North Carolina House of
Representatives,
Defendants.

No. 97-1459

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(CA-96-115-5-BR)

Argued: October 2, 1997

Decided: November 12, 1997

Before WIDENER, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John C. Randall, RANDALL, JERVIS & HILL, Durham,
North Carolina, for Appellants. S. C. Kitchen, OFFICE OF THE
DURHAM COUNTY ATTORNEY, Durham, North Carolina; Jac-
queline Ann Berrien, NAACP LEGAL DEFENSE AND EDUCA-
TIONAL FUND, INC., New York, New York, for Appellees. **ON
BRIEF:** Lowell L. Siler, OFFICE OF THE DURHAM COUNTY
ATTORNEY, Durham, North Carolina; Elaine R. Jones, Director-
Counsel, Norman J. Chachkin, NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC., New York, New York; Irving Joyner,
Durham, North Carolina; Anita S. Hodgkiss, FERGUSON, STEIN,
WALLAS, ADKINS, GRESHAM & SUMTER, P.A., Charlotte,
North Carolina; Adam Smith, FERGUSON, STEIN, WALLAS,
ADKINS, GRESHAM & SUMTER, P.A., Chapel Hill, North Caro-
lina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Following the state-directed merger in 1992 of the Durham County, North Carolina, public school system with the Durham City public school system to form a single county-wide "Durham Public School System," state and county officials agreed on a three-tiered district plan by which to elect seven school board members. The plan provided for division of Durham County into four geographical districts with a population in each ranging from 44,210 to 46,961; the combination of two districts each to form two larger "consolidated districts"; and one county-wide district.

Three individuals filed suit against county and state boards and officials, contending that the redistricting plan was racially based, violating § 2 of the Voting Rights Act and the Fourteenth Amendment. Plaintiffs also filed a motion for a preliminary injunction, and the defendants filed motions for summary judgment. The district court concluded that the plaintiffs failed to establish a claim under § 2 of the Voting Rights Act, 42 U.S.C. § 1973, as interpreted by Thornburg v. Gingles, 478 U.S. 30 (1986), because they failed to offer any documentation regarding the "political cohesiveness of the white voters or whether the black voters act sufficiently as a block to preclude the election of preferred candidates of white voters." The court also concluded that taking the totality of the circumstances to determine whether the voters in the county had an equal opportunity to participate in the political process, the plaintiffs "again neglected to come forward with any evidence." On the constitutional claims, the court concluded that the plaintiffs did not have standing because the plaintiffs, who are white, did not reside in the majority black districts, relying on United States v. Hays, 115 S. Ct. 2431 (1995). The court nonetheless concluded that "[o]verall, plaintiffs have again failed to offer evidence sufficient to warrant a Fourteenth Amendment violation. At the core of their complaint, plaintiffs appear to be dissatisfied that white candidates were not elected in direct proportion to the racial population percentages."

This appeal followed, and we now review the district court's summary judgment de novo.

3

We must first address the issue of plaintiffs' standing. If it is supposed that only the black majority districts were at issue before us, it might very well be true that under Hays the plaintiffs would lack standing to challenge them. But in this case the plaintiffs, even though they live in white-majority districts, are challenging the constitutionality of the three-tiered plan, not a single district plan. They each have three votes for seven school board members, and they claim that the structure and line-drawing denies them equal treatment at least as to one or two of their votes. In this factual context, the plaintiffs have a sufficiently concrete and particularized interest in the entire three-tiered plan to justify standing. See Hays, 115 S. Ct. at 2435.

On the merits, our careful review of the summary judgment in this record leads us to conclude that race was not a motivating basis for the three-tiered plan for the Durham County School System. The record does reveal that racial concerns were expressed by various members of the Durham County Board of Commissioners in consideration of earlier proposals because it was obvious to all that the majority of the population in the city of Durham was black. But none of the references in the record support a conclusion that race was a predominant factor motivating the development of the plan. Following various efforts to create a plan satisfactory to the city, the county, and the state, the county commissioners enlisted Jerry Cohen, who was director of legislative drafting for the North Carolina General Assembly, to design a plan. Cohen testified that he was given no instructions based on race, but that he was to find a compromise between the Durham County Commissioners and the State Board of Education, which had rejected earlier plans. His first objective, he testified, was to satisfy the need to have most members of the school board elected from single member districts and at the same time to allow the voters to vote for more than one candidate. Cohen also indicated that he wanted to balance city and county interests, adhering to some extent to city boundary lines, and he wanted to avoid fracturing existing voting precincts. He also wanted to equalize the population in the basic districts as much as possible. When asked why two of the four basic districts were predominantly black, he testified:

> I think that's a coincidence of the goal of having districts initially based on the former city school system and the former county school system. I think it is a result.

4

Indeed, he testified that he did not even look at the racial composition of his districts until after he had designed the fundamental architecture of the district lines, based upon the old city and county school district boundaries.

The plaintiffs presented no evidence to challenge Cohen's testimony. While the plaintiffs did amply demonstrate a general awareness by the parties involved of racial issues and racial composition, that evidence falls far short of demonstrating that the legislative purpose was subordinated to racial considerations.

> To make [the requisite] showing, a plaintiff must prove that the legislature subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, respect for political subdivisions or communities defined by actual shared interests, to racial considerations. Where these or other race-neutral considerations are the basis for redistricting legislation, and are not subordinated to race, a state can "defeat a claim that a district has been gerrymandered on racial lines."

Miller v. Johnson, 115 S. Ct. 2475, 2488 (1995) (quoting Shaw v. Reno, 509 U.S. 630 (1993)). In the absence of such evidence, we must presume that the legislative body acted in good faith and that it followed the law in its redistricting efforts. Id.

For the reasons given by the district court in connection with its disposition of the Voting Rights Act claim and for the reasons that we have given here in connection with the constitutional claims, we affirm the judgment of the district court.

AFFIRMED

5